IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WALTER V. RODENHURST, III, | ) | CIV. NO. 08-00396 SOM-LEK |
| # A0137543, | ) | |
| | ) | ORDER GRANTING IN PART AND |
| Plaintiff, | ) | DENYING IN PART STATE |
| | ) | DEFENDANTS' MOTION TO DISMISS; |
| vs. | ) | TRANSFER ORDER |
| | ) | |
| STATE OF HAWAII, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION TO DISMISS; TRANSFER ORDER

Before the court is the remaining State Defendants'
Motion to Dismiss Plaintiff Walter Rodenhurst, III's claims
against them, as asserted in his prisoner civil rights
complaint.[1]  State Defendants move for dismissal of Rodenhurst's
claims against them as time-barred.

Hearings on the Motion were held on March 8, and April
12, 2010.  Deputy Attorney General John M. Cregor, Esq., appeared
on behalf of State Defendants, and Rachel Love, Esq., appeared by
telephone on behalf of Defendants Corrections Corporation of
America (CCA), John Keesling, Muhammed Haleem, M.D., Todd Thomas,

---

[1] On July 30, 2009, the court dismissed the State of Hawaii
and all damage claims against all State Defendants named in their
official capacities.  (Doc. 229.)  The remaining "State
Defendants" are: Kay Bauman, M.D., Kenneth Zienkiewicz, M.D.,
Frank J. Lopez, Clayton Frank, Wesley Mun, Doris Robinson, R.D.,
Nolan Uehara, Eric Tanaka, Nathalie Kodama, David Saldana, M.D.,
Carmillo Santiago, Mary Tummenillo, John Ioane, Howard Komori,
Burt Santiago, June Tavares, and Shari Kimoto.  The earlier order
left pending claims for prospective injunctive relief against
State Defendants in their official capacities.

Jody Bradley, Daren Swenson, Ben Griego, Patricia Sells, R.N., Anastacio Perez, Diane Duffy, R.N., Phyllis Hansen, R.N., Diann Pierson, and Lane Blair (collectively, "CCA Defendants"). Rodenhurst participated via telephone. For the following reasons, State Defendants' Motion is **GRANTED IN PART AND DENIED IN PART,** and this action is TRANSFERRED to the United States District Court for the District of Arizona.

## I. <u>BACKGROUND</u>

On December 4, 2002, Rodenhurst, a presentence detainee in the custody of the State of Hawaii's Department of Public Safety (DPS), was placed in the Oahu Community Correctional Center (OCCC), a state facility. (Compl.¶ 34.) In August 2003, Rodenhurst was transferred to another state facility, the Halawa Correctional Facility (HCF), located on Oahu, Hawaii. (<u>Id.</u> ¶ 57.) In April 2006, pursuant to contracts the State of Hawaii has with CCA, the State transferred Rodenhurst to the Diamondback Correctional Facility (DCF), located in Watonga, Oklahoma. He was held at DCF until his transfer in August 2007 to the Saguaro Correctional Center (SCC) in Eloy, Arizona, where he remains. (<u>Id.</u> ¶¶ 88, 111.)

In a complaint filed on September 3, 2008, Rodenhurst alleges that Defendants violated the Eighth Amendment when they failed to provide him with adequate medical care between December 2002 and the present, while he was incarcerated at OCCC, HCF,

2

DCF, and SCC. (See Compl.) Specifically, Rodenhurst claims that

Defendants failed (1) to provide him with a prescribed

therapeutic diet; (2) to satisfy his medication needs; (3) to

provide him medical treatment; (4) to permit him to travel to

Hawaii to see his personal doctor; (5) to allow him and inmate

Kamaka Villegas to remain cellmates, with Villegas then allegedly

able to assist Rodenhurst in meeting his medical needs; and (6)

to allow him access to the courts. (Id.) Rodenhurst also raises

state-law negligence claims. (Id.) He seeks monetary damages

and injunctive relief. (Id.)

## II. LEGAL STANDARD

Although State Defendants call their Motion one for

dismissal, the court construes their motion as seeking judgment

on the pleadings, as State Defendants have previously filed an

answer to the complaint. Rule 12(c) of the Federal Rule of Civil

Procedure provides that any party may move for judgment on the

pleadings after the pleadings are closed. "A judgment on the

pleadings is properly granted when, taking all the allegations in

the pleadings as true, the moving party is entitled to judgment

as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196,

1200 (9th Cir. 1998); Owens v. Kaiser Found. Health Plan, Inc.,

244 F.3d 708, 713 (9th Cir. 2001).

The standards governing a Rule 12(c) motion for

judgment on the pleadings are the same as those governing a Rule

12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted. See Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989); Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency, 24 F. Supp. 2d 1062, 1066 (E.D. Cal. 1998).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Amer. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)). A motion to dismiss may also be granted if an

affirmative defense or other bar to relief is apparent from the face of the complaint, such as a statute of limitation. <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976).

## III.  **DISCUSSION**

State Defendants argue that Rodenhurst's claims against them are time-barred.  Rodenhurst argues that his claims either (1) are subject to statutory or equitable tolling; (2) are continuing violations that have not yet accrued; or (3) did not accrue until he discovered he had diabetes in March 2007.

## A.  **Statute of Limitations**

Federal courts borrow the state statute of limitation for personal injury suits in § 1983 actions. <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1985); <u>Johnson v. California</u>, 207 F.3d 650, 653 (9th Cir. 2000).  The statute of limitation applicable to § 1983 actions in Hawaii is Hawaii Revised Statute ("Haw. Rev. Stat.") § 657-7, the two-year "general personal injury" provision. <u>See Pele Defense Fund v. Paty</u>, 73 Haw. 578, 597-98, 837 P.2d 1247, 1260 (1992).  Under Haw. Rev. Stat § 657-7, "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."

Rodenhurst alleges that State Defendants denied him proper medical care while he was incarcerated at OCCC and HCF,

from December 2002 until April 2006. (Compl. ¶¶ 64-80.) He was transferred from Hawaii to DCF on or about April 18, 2006, and has been incarcerated at DCF and SCC since then. (Id. ¶ 81.) On September 3, 2008, Rodenhurst filed the present action. State Defendants contend that all of Rodenhurst's claims against them involve matters that occurred prior to September 3, 2006, and thus are time-barred by the two-year limitation on personal injury actions.[2] With the exception of certain claims against State Defendant Kay Bauman, M.D., the court agrees that the damage claims against the remaining State Defendants occurred outside of the two-year limitation period set forth in Haw. Rev. Stat. § 657-7.[3]

1.   **The Statute of Limitation is Not Tolled by Haw. Rev. Stat. § 657-13.**

Rodenhurst does not dispute that the allegations against State Defendants involve matters occurring more than two years before he filed this action. He argues, however, that his incarceration tolled the statute of limitation under Haw. Rev. Stat. § 657-13. (Mem. in Opp. at 1-2.) This court disagrees.

---

[2] State Defendants inadvertently refer to Haw. Rev. Stat. § 657-2, which is the limitation on personal actions concerning a mutual current account.

[3] Defendant Bauman was the DPS Chief Medical Director. (Compl. ¶ 5.) Rodenhurst alleges that Bauman interfered with his medical treatment in September 2007, while he was incarcerated at SCC. (Id. ¶ 115.) This claim accrued within two years of filing this action.

While Haw. Rev. Stat. § 657-13 tolls the statute of limitation for those who, at the time the action accrued, are under the age of eighteen, insane, or incarcerated for a term less than life, it does not toll the limitation period for suits against the sheriff or police. <u>See</u> Haw. Rev. Stat. § 657-13.[4]  This tolling exception also applies to the DPS and its employees. *See* <u>Samonte v. Sandin</u>, Civ. No. 05-00353, 2007 WL 461311, at *4 (D. Haw., Feb. 07, 2007) (noting that "[t]he statute creating the department of public safety specifically states that the 'functions, authority, and obligations, . . . and the privileges and immunities conferred thereby, exercised by a "sheriff" . . . shall be exercised to the same extent by the department of public safety'").  All State Defendants are alleged to be DPS employees. (Compl. ¶¶ 4-18.)  The limitation period applicable to Rodenhurst's claims against State Defendants is not tolled by Haw. Rev. Stat. § 657-13.

### 2.    **These Claims are Not Subject to Equitable Tolling**.

Rodenhurst also argues that his claims against State Defendants should be equitably tolled, based on his ongoing

---

[4] Under Haw. Rev. Stat § 657-13, "[i]f any person entitled to bring any action specified in this part . . . is, at the time the cause of action accrued . . . [i]mprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than the person's natural life; such person shall be at liberty to bring such actions within the respective times limited in this part, after the disability is removed or at any time while the disability exists."

administrative grievance process. In particular, although Rodenhurst acknowledges that his grievances at HCF concluded on January 4, 2006, he contends that he was forced to begin a new grievance with CCA when he was transferred to DCF.[5] (Doc. 300 at 2, Attach. A.) It is true that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) (citing Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001)). In this instance, however, as Rodenhurst concedes, the grievance process against State Defendants relating to matters occurring while he was incarcerated at OCCC and HCF concluded on January 4, 2006. (Doc. 300 at 2, Attach. A.) Therefore, any tolling with respect to Rodenhurst's claims against State Defendants ceased on January 4, 2006, well outside the applicable statute of limitation period.

At the continued hearing on the Motion on April 12, 2010, Rodenhurst asserted that his grievance at HCF was not exhausted prior to his transfer to DCF in April 2006.[6] That

---

[5] Rodenhurst asserts that claims relating to his incarceration at OCCC and HCF "matured, at the earliest on January 4, 2006, the date of disposition of the Final 3rd Step exhaustion of State Remedies as evidenced by Grievance #115934." (Doc. 300 at 2, Attach. A.)

[6] At the continued hearing, Rodenhurst read his oral argument from a prepared statement. Rodenhurst has filed that statement with the court. (See Doc. No. 313.) Defendants waived a written response to the statement.

assertion is clearly at odds with his statements in opposition to the instant Motion, <u>supra</u> n.6, and in a previous filing in this case.  In opposition to the CCA's Motion to Dismiss for Failure to Comply with the Prisoner Litigation Reform Act ("PLRA Motion"), Rodenhurst asserted "that exhaustion of all administrative remedies occurred in Hawaii." (Doc. 217 at 5, Attach. N.)

More importantly, the record establishes that, of the seven grievances that Rodenhurst filed at HCF, all were either resolved satisfactorily or were voluntarily abandoned by Rodenhurst.  For example, Rodenhurst indicates that he filed three grievances (nos. 99944, 99954, and 99955) in 2003 while at HCF.  (Doc. 313 at 9.)  Those grievances concerned Rodenhurst's request for a special medical diet in the first instance.[7] Rodenhurst received an oral response to no. 99944 and a written response to nos. 99954 and 99955.  (<u>Id.</u>)  He does not indicate that the responses were unsatisfactory, or, if they were, that he appealed those decisions.  Moreover, those grievances were clearly resolved; Rodenhurst was receiving a special medical diet by January 2005, as indicated in grievance no. 106762.  (<u>See</u> Doc. 300, Attach. A; <u>see also</u> Compl. ¶¶ 83-84 (alleging that

_____

[7] Of the three grievances Rodenhurst filed in 2003, he only attaches grievance no. 99944 to his opposition.  The attachment is largely unreadable, but the legible portions concern Rodenhurst's request for a special diet conforming to his medical needs.  (Doc. 300, Attach. A.)

Rodenhurst was issued a special diet memo every three months from September 2003 through April 2006).)

On December 19, 2004, Rodenhurst filed grievance no. 106753, complaining that he was unable to see his personal physician. (Doc. 300, Attach. A.) That grievance was resolved on December 29, 2004, when Rodenhurst was allowed to visit his personal physician. (Id.) On January 4, 2005, Rodenhurst filed grievance no. 106762, complaining that he was being served "processed meats" in violation of his special diet memo. (Id.) This dispute concerned a disagreement between the inmate cook and Rodenhurst over whether "veal patty" constituted processed meat. The matter was resolved when HCF ensured that concerns regarding Rodenhurst's special diet were handled by food service staff and not inmate staff. (Id.)

On November 29, 2005, Rodenhurst filed grievance no. 113919, essentially complaining that the DPS Health Care Unit (HCU) was failing (1) to provide adequate and required medication on a timely basis, (2) to physically monitor the quality and level of compliance with his special medical diet memorandum, and (3) to issue a "special Therapeutic Medical Diet memorandum . . . which goes beyond and above the regular special diet requirements" as prescribed by his personal physicians. (Doc. 300, Attach. A.) In response, HCF stated (1) that if Rodenhurst had a concern regarding monitoring and compliance with his

medically prescribed diet, he should address that concern with the food services manager, not HCU; (2) that the pharmacy had been notified of his issue concerning the receipt of his medication; and (3) that Rodenhurst was "seen on a regular basis by doctors, nurses, the psychiatrist and dietician." (<u>Id.</u>)

On December 19, 2005, Rodenhurst filed grievance no. 115934, indicating that he was appealing the response to grievance no. 113919. (Doc. 300, Attach. A.) Rodenhurst acknowledged an appropriate resolution to his medication grievance, but continued to assert that HCU was required to monitor the quality of and compliance with his existing special medical diet, and that he was also entitled to a medically prescribed diet that exceeded the existing one. (<u>Id.</u>) In response, on December 23, 2005, HCF stated that Rodenhurst's grievance was unreviewable because (1) he was not permitted to reference a previous grievance issue without explaining his concern in the current grievance; and (2) there was a limit of one issue per grievance. (<u>Id.</u>) Rodenhurst was told to resubmit his grievance following the stated guidelines and advised that he had five days to appeal if he was dissatisfied with the decision.[8] (<u>Id.</u>) Rodenhurst neither resubmitted his grievance

---

[8] Rodenhurst acknowledged receipt of this decision on January 4, 2006. (Doc. 300, Attach. A.)

nor appealed the decision prior to his transfer to DCF in April 2006, over three months later.

While State Defendants bear the burden on this Motion of establishing their entitlement to judgment on the pleadings, Rodenhurst has the burden of providing some basis for the equitable tolling he seeks. Even if this court converted the present motion to a summary judgment motion and considered all matters outside the pleadings Rodenhurst presents, Rodenhurst would not establish that equitable tolling applied. This is because the evidence that Rodenhurst himself provides indicates that, with respect to the grievances upon which Rodenhurst bases his claims against State Defendants relating to events occurring prior to April 2006, Rodenhurst exhausted the grievances either by a satisfactory disposition or by his voluntary abandonment of the grievances. The court is left without a basis in the record to conclude that equitable tolling bars application of the two-year statute of limitations to claims against State Defendants arising from alleged actions that occurred while Rodenhurst was incarcerated at OCCC and HCF.[9]

---

[9] Even if this court were to indulge Rodenhurst's contradictory assertions, his position would not be enhanced. For example, if Rodenhurst's claims against State Defendants have not been exhausted, this court must examine whether such claims are subject to dismissal for failure to exhaust under the PLRA, as asserted by Defendants earlier in this litigation. Assuming there was no exhaustion, and based on the evidence submitted thus far by Rodenhurst himself, this court's inclination would be to

(continued...)

### 3.    Rodenhurst's Claims Against State Defendants Do Not Concern Continuing Violations.

Rodenhurst also contends that his claims against State Defendants are not time-barred because they are continuing in nature. (Doc. 313 at 2.) This court disagrees. Generally, a continuing tort is defined as

> one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation, and for there to be a continuing tort there must be a continuing duty.

Anderson v. State, 88 Hawaii 241, 247, 965 P.2d 783, 789 (1998) (quoting 54 C.J.S. Limitations of Actions § 177 (1987)). With a continuing tort, the statute of limitations cannot run, because the tortious conduct is ongoing. Id. at 248, 965 P.2d at 790. A claim asserting a continuing tort is viable when there is "no single incident" that can "fairly or realistically be identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) (internal citations omitted).

The alleged unlawful actions by State Defendants giving rise to damage claims ceased at the latest in April 2006, when

---

[9](...continued)
dismiss for failure to exhaust. This court need not reach this issue, because there is undisputed evidence that Rodenhurst's grievances against State Defendants relating to acts that occurred while he was incarcerated at OCCC and HCF were satisfactorily resolved, and thus, exhausted.

Rodenhurst was transferred to DCF. The alleged unlawful actions by CCA Defendants commenced during his later incarceration at DCF and SCC. Putting aside claims against Bauman allegedly arising after September 3, 2006, as discussed supra, the court finds absolutely no indication in the record that any individual State Defendant engaged in any alleged continuing unlawful action giving rise to a damage claim after Rodenhurst was transferred from HCF. Rodenhurst's damage claims against State Defendants allege discrete and separate acts, not continuing tortious conduct.

A comparison of claims against State Defendants with claims against CCA Defendants further clarifies that Rodenhurst's claims against State Defendants are separate and distinct acts. For example, many of the allegations against CCA Defendants concern Rodenhurst's claim that he and inmate Villegas were not allowed to remain cellmates at DCF and SCC. (See Compl. ¶¶ 102-14, 124-33, 142.) Rodenhurst's other allegations against CCA Defendants include lack of access to his personal physician (Compl. ¶¶ 101, 116, 118-23, 137), noncompliance with his special diet and medication requirements (Compl. ¶¶ 96-100, 135-36), and inadequate access to courts (Compl. ¶ 134). While there is a general similarity between certain claims against State Defendants and CCA Defendants (i.e., alleged denial of adequate medical treatment), the individual damage allegations against CCA

Defendants are wholly distinct and separate from the damage claims raised against State Defendants. Accordingly, Rodenhurst's damage claims against State Defendants appear to involve matters that ended when Rodenhurst was transferred to facilities run by CCA Defendants. As there are no continuing violations asserted in the damage claims, the statute of limitation applies to those claims.

### 4. Rodenhurst's Claims Against State Defendants Accrued, At the Latest, By the Time He Filed His Grievances.

Rodenhurst also argues that the statute of limitation does not bar his claims against State Defendants because his cause of action did not accrue until March 2007, when he was diagnosed with diabetes. (Doc. 313 at 8.) Although federal courts borrow the statute of limitation for § 1983 claims applicable to personal injury claims in the forum state, "federal, not state, law determines when a civil rights claim accrues." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). Under federal law, a claim accrues when a defendant "knew or had reason to know of the [prison] employees' deliberate indifference to his medical needs." Id. at 992.

With respect to Rodenhurst's damage claims against State Defendants, it is clear that his claims accrued, at the latest, by the time he formally grieved the alleged failures (1) to monitor the quality and compliance of his special medical diet, and (2) to provide him with a special therapeutic medical

diet that exceeded the existing special diet. (Doc. 300, Attach. A.) On November 29, 2005, well outside the applicable two-year statute of limitations, Rodenhurst filed grievance no. 113919, which set forth the bases for his claims that State Defendants were deliberately indifferent to his medical needs. This grievance is lengthy (4 pages), detailed, and reads like a formal complaint. It unquestionably demonstrates that Rodenhurst knew or had reason to know of State Defendants' alleged deliberate indifference to his medical needs at that time.

Rodenhurst's diabetes diagnosis in March 2007 does not alter the date his claims against State Defendants accrued. First, Rodenhurst's claim is more far-reaching than one relating to diabetes. For example, Rodenhurst also alleges that State Defendants failed to treat him for "gall stone disease, pancreatic injury, diabetes and kidney disease." (Compl. ¶ 151.) Notably, the gall stone disease and pancreatitis were conditions that Rodenhurst alleges he has suffered from since 2002. (Compl. § 41.) Second, it is the alleged failure to provide medical care, i.e., deliberate indifference, not the medical conditions themselves, that form the bases of Rodenhurst's damage claims against State Defendants. Rodenhurst was well aware of any allegedly deficient medical treatment more than two years before he filed suit, and the grievances he filed show that even then he had reason to think his health was being harmed. While he may

not have known precisely what conditions would develop, in the "Addendum" to grievance No-113919, Rodenhurst complained that he was not receiving "appropriate medical care to ensure the health and welfare of Patient." The grievance is difficult to read, but Rodenhurst does allege that State Defendants caused him harm.

If Rodenhurst could extend the statute of limitations every time he learned of a new condition, then the statute could conceivably begin anew with every instance of weight gain or weight loss, stomach cramps, constipation, or diarrhea. The court is not, of course, equating diabetes with a transitory ailment. Rather, the court raises those illustrations out of concern that Rodenhurst's logic could work to nullify all limitation statutes even when a claimant knows of both alleged wrongdoing and alleged harm (but possibly not the details of the harm) from the outset. The diabetes diagnosis goes to the nature and amount of damages, not to knowledge of the existence of a claim. See Two Rivers, 174 F.3d at 982.

Rodenhurst's damage claims against State Defendants in their individual capacities concerning alleged deliberate indifference prior to September 3, 2006, are barred by the two-year statute of limitations set forth in Haw. Rev. Stat. § 657-7.

**B.**     **Prospective Injunctive Relief**

In an order dated July 30, 2009, the court noted that it was unclear whether Rodenhurst's official-capacity claims

against the individual State Defendants involved only their actions during his incarceration in Hawaii, or also involved their alleged lack of oversight of Hawaii prisoners housed at DCF and SCC. (Doc. 229.) The court now concludes that Rodenhurst's claims for prospective injunctive relief concerning alleged actions during his incarceration in Hawaii are moot based on his transfer to CCA facilities outside of Hawaii. See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (holding that when a prisoner seeking injunctive relief from a certain prison's regulations ceases to be housed in that facility, the case or controversy ceases to exist and the matter is moot). Insofar as Rodenhurst seeks prospective injunctive relief against State Defendants for their alleged lack of oversight (pursuant to their contract with CCA) after Rodenhurst left the Hawaii facilities, that claim remains.[10]

## C.    **Transfer of Venue**

On February 13, 2009, the court adopted the Magistrate Judge's findings and recommendation that CCA Defendants' motion for a transfer of venue be denied.[11] (Doc. 149.) The court

---

[10] State Defendants assert that Defendant Clayton Frank is the appropriate State Defendant to sue for injunctive relief claimed against State Defendants. (Mem. in Supp. of Mot. at 7.) Defendant Frank states that he consents to jurisdiction and venue in Arizona if this action is transferred. (Mot., Frank Decl. ¶ 4.)

[11] CCA Defendants moved to transfer this action in their
(continued...)

concluded that, as Defendants did not all reside in the same state, and as there were multiple districts in which the action could be brought, "[v]enue is proper where a substantial part of the events giving rise to the claim occurred." (<u>Id.</u>) (citing 28 U.S.C. § 1391(b)(2).) Because many of the claims alleged in the Complaint arose out of actions in Hawaii, venue was proper in the District of Hawaii. (<u>Id.</u>)

CCA Defendants argued that transfer of venue to the District of Arizona was appropriate because Rodenhurst's claims against State Defendants were barred by the applicable statute of limitations. However, because State Defendants had not earlier filed a motion to dismiss or for summary judgment on that basis, Rodenhurst's claims against them were still pending and properly considered by this court in determining venue. (<u>Id.</u>) State Defendants now request that this action be transferred to the District of Arizona, and CCA Defendants join that request. (Doc. 293.)

A request for transfer of venue is governed by 28 U.S.C. § 1404(a). That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of the

[11](...continued)
first responsive pleading to the Complaint. (Doc. 95.) State
Defendants joined in that motion. (Doc. 96.)

statute is to "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964) (quoting <u>Continental Grain Co. v. Barge FBL-585</u>, 364 U.S. 19, 26-27 (1960)). Section 1404(a) vests "discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 27 (1988) (citation and internal quotation marks omitted).

The Ninth Circuit has stated that courts must weigh multiple factors in considering a motion for change of venue. <u>See</u> <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000). These factors include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

<u>Id.</u> at 498-99 (internal footnotes omitted).

The Ninth Circuit also directs courts to consider private and public interest factors affecting the convenience of a forum. <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d

834, 843 (9th Cir. 1986). The private interest factors are:

> (1) relative ease of access to sources of proof;
> (2) the availability of compulsory process for
> attendance of unwilling witnesses, and cost of
> obtaining attendance of willing witnesses; (3)
> possibility of viewing subject premises; (4) all
> other factors that render trial of the case
> expeditious and inexpensive.

Creative Technology v. Aztech Sys. PTE, 61 F.3d 696, 703(9th Cir.

1995).

> The public interest factors are:

> (1) administrative difficulties flowing from court
> congestion; (2) imposition of jury duty on the
> people of a community that has no relation to the
> litigation; (3) local interest in having localized
> controversies decided at home; (4) the interest in
> having a diversity case tried in a forum familiar
> with the law that governs the action: (5) the
> avoidance of unnecessary problems in conflicts of
> law.

Id. at 703-704.

In light of the present ruling entering judgment on the

pleadings with respect to all claims against State Defendants

arising out of alleged acts or omissions in Hawaii, the court

determines that the balance of factors weighs in favor of

transferring this action to the District of Arizona. That is

where the significant events or omissions material to

Rodenhurst's remaining claims occurred, where witnesses may be

found, where access to the necessary evidence is easier, and

where there is a local interest in resolving his claims.

Transferring this action will prevent a waste of time and money

21

and protect those involved in this action from unnecessary inconvenience and expense. See <u>Van Dusen</u>, 376 U.S. at 616. Accordingly, the request to transfer venue is GRANTED.

### III. CONCLUSION

State Defendants' Motion to Dismiss Plaintiff's Civil Rights Complaint for Damages Filed on September 3, 2008, is GRANTED IN PART AND DENIED IN PART, and this action is TRANSFERRED to the United States District Court for the District of Arizona, as follows:

1.    Judgment on the pleadings is entered in favor of all State Defendants, with the exception of Defendant Kay Bauman, M.D., in their individual capacities.

2.    With respect to Defendant Bauman in her individual capacity, only claims arising after September 3, 2006, remain.

3.    Claims for prospective injunctive relief against State Defendants in their official capacities for alleged acts or omissions that occurred while Rodenhurst was incarcerated at OCCC or HCF (prior to his transfer in April 2006) are MOOT.

4.    Claims for prospective injunctive relief against State Defendants in their official capacities for their alleged lack of oversight over Hawaii's inmates, pursuant to the agreement between CCA and the State, and relating to Rodenhurst's ongoing incarceration remain.

5.   Claims against CCA Defendants remain for future adjudication.

6.   The Clerk of Court is DIRECTED to TRANSFER this action to the United States District Court for the District of Arizona.

7.   The parties are directed to contact the Clerk of that court in connection with pending matters, including briefing deadlines and a hearing schedule relating to CCA Defendants' pending summary judgment motion.  Unless otherwise directed by the District of Arizona, the parties should meet existing deadlines.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 29, 2010.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge